Opinion of the Court, by
Ch. J. Boyle.
Andrew Steele sold to one Allison, 350 acres of land, which he claimed in part as locator, and in part by purchase under Quirk, to whom the grant from the commonwealth emanated. Allison sold 200 acres of this land to one Dryden, and the residue of 150 acres to Vance, the appellee. This 150 acres the appellee sold to one Williams, for 33s. 4d. per acre; but, by the terms of the agreement, the purchase money was not to be paid until Williams received a legal title to the land. Andrew Steele died, and in this situation of things the appellee, on the 26th of April 1800, entered into an agreement with the appellant, who had intermarried with one of Steele’s heirs; by which agreement the appellant undertook, within three months thereafter, to make a title to Williams, and receive the purchase money from him, if he should be ready to pay it on the deed’s being tendered to him; but if not, that he would use all lawful means to get the money from Williams for the appellee; and the appellee, on his part, agreed that the appellant might rescind the contract with Williams, and take the land into his own hands; in which case, the appellee was to have his election, whether he would take the land or the money; but, in either case, he was to allow the appellant fifteen per cent. for his trouble.
The appellant rescinded the contract with Williams, took the land into his possession, and after renting it out for two years, sold it, and has received the whole, or the greater part of the money. The appellee having elected to take the money, of which he notified the appellant, instituted suit and recovered judgment at law (by confession, reserving equity,) for the amount (except the fifteen per cent.) of the 150 acres, at 33s. *109 4d. per acre, with interest from the 20th of July 1800 until paid.
To enjoin proceedings upon this judgment, the appellant filed his bill, alleging as his grounds for relief, that the appellee had, by fraud or mistake, represented the legal title of the 150 acres to be in Steele’s heirs, when in truth it was transferred by Quirk to one Edwards, who claimed to be an innocent purchaser, and was prosecuting suit for it; that Quirk has departed this life, leaving his wife, who had set up claim to dower in the land in question; and that Allison, from whom the appellee purchased, has not paid the consideration money to Steele or his representatives.
The appellee denies making the representation with respect to the title; states that the purchaser under the appellant has obtained a decree against Edwards, for the conveyance of the legal title; that he knows nothing of Quirk’s marriage, or of his leaving a widow; and that Allison has paid the whole, or nearly the whole of the purchase money; but contends, if he has not, that non-payment of it furnishes no ground for withholding from him the money in contest.
Upon a final hearing, the injunction was dissolved, as to £212, and made perpetual as to the residue; from which decree the appellant prosecutes this appeal.
It was contended, in the first place, on the part of the appellant, that he is entitled to the relief sought for by the bill, on the score of fraud in the appellee, in misrepresenting the true state of the title. But the evidence in the cause furnishes no premises, from which fraud can be inferred. It is true, that the agreement between the appellant and appellee suggests, in the recital expressed in the person of the appellee, that the legal title was in Steele’s heirs; but this suggestion must be understood as being assented to by the appellant; and there is no proof that the appellee was better informed, with respect to the state of the title, than the appellant. On the contrary, the presumption arising from the situation of the appellant, would naturally seem to lead to a different conclusion. We can, therefore, see no ground for the imputation of fraud to the appellee.
It is, however, not improbable, that both parties acted under a mistaken apprehension that the legal title was vested in Steele’s heirs; and, under this supposi *110 tion, it was contended, in the second place, for the appellant, that, standing in the situation of a purchaser from the appellee, he ought not, in justice, to be compelled to part with his money, until he, or Steele’s heirs, shall receive an undisputed legal title to the land in question.
As a general principle, it is certainly correct, that a purchaser cannot be compelled to accept of a doubtful or defective title; but this principle is obviously inapplicable to the present case. The situation of the appellant is, in many respects, widely different from that of an ordinary purchaser. Steele was the original vender, and by the intermarriage with one of his heirs, the appellant became bound, anterior to, and independent of any agreement of his own, to procure the legal title, that he might be enabled to fulfil the engagement of his ancestor to convey. But, in addition to the obligation thus incumbent upon him as one of the representatives of Steele, the manifest spirit of his agreement with the appellee, required him (if the want of the legal title were an objection to the payment of the money) to use the proper means to acquire it. He had become the agent of the appellee, who, by electing to take the money, had ceased to have any interest in, or control over the land.
If, then, the appellant were under a mistake as to the legal title being in Steele’s heirs, when he discovered that mistake, it was his duty, both as the representative of the original vender and as the agent of the appellee, to use at least ordinary diligence in endeavoring to obtain it; but during a period of eight or nine years, which had elapsed from the time of entering into the agreement with the appellee, until he filed his last amended bill, he has not suggested any measure he had taken to complete the legal title. After such neglect, he presents himself with but an ill grace before a court of equity, for the relief which he asks. To entitle himself to that relief, he ought to have shown that he had performed every thing which his duty required him to perform; for he who asks equity, ought to show that he has done equity.
But, to remove every pretext of objection on the score of the legal title not being in Steele’s heirs, the appellee has shown that the appellant has sold the land *111 in question, and that the purchaser under him has obtained a decree for a conveyance against Edwards, the holder of the legal title. No appeal appears to have been taken from this decree; and although it does not transfer the legal title, it puts it in the power of the party claiming under it, to get the conveyance of the legal title whenever he may choose. To all beneficial and equitable purposes, the situation of the appellant is therefore equal to his expectations at the time he entered into the agreement with the appellee. It was, indeed, suggested at the bar, that Edwards was prosecuting a writ of error to reverse that decree; but we cannot travel out of the record, to notice a fact of this kind. If such be the fact, and the decree should be reversed, and the title of the appellant ultimately prove defective, he will not be without a remedy.
With respect to the claim of dower, set up by the widow of Quirk, the proof is too defective, to authorise the court to say it has any foundation, it not being shown when the marriage took place, or when Quirk parted with the legal title.
It was, lastly, contended on the part of the appellant, that Allison, the original purchaser from Andrew Steele, had not paid the purchase money; and that, therefore, the appellee, claiming under him, had no right to demand the land, or the money for which he sold it. It is probable, from the evidence in the cause, that there remains a balance of the purchase money unpaid; but the right of the appellant to avail himself of this, as an objection to the performance of his agreement, is extremely questionable; and certainly he could do so only by making the administrator of Steele, who alone had a right to receive the balance of the purchase money, and the representative of Allison, who was bound to pay it, parties to the suit. It is only in a suit where they are parties, that their accounts can be adjusted, and the true balance ascertained. But, from what appears to the court, the residue of the judgment at law, which was perpetually enjoined by the court below, is equal, or nearly so, to the balance of the purchase money. So that, on this ground, the appellant seems to have no cause to complain.
It is therefore decreed and ordered, that the decree of the circuit court be affirmed, with ten per centum *112 damages upon the amount of damages decreed by the said circuit court. And it is further decreed and ordered, that the appellant pay to the appellee his costs in this appeal expended.
NOTE—A petition for re-hearing was presented, a re-hearing granted, and the cause again argued; but, at the Spring Term 1811, the foregoing opinion was confirmed.